## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **KAREN A. ARNETT, et al.,** | : | **Case No. C-1-02-87** |
| | : | |
| **Plaintiffs,** | : | **(Judge S. Arthur Spiegel)** |
| | : | **(Magistrate Judge Hogan)** |
| **vs.** | : | |
| | : | |
| **WILLARD INDUSTRIES, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

### CONSENT DECREE

It appearing to the Court that:

1)       the above-captioned action has been resolved by agreement of the parties thereto, which agreement is embodied in the Settlement Agreement dated December 4, 2003 ("Agreement"), and by this reference made a part hereof, without trial or adjudication of any disputed issue of law or fact, and without this Consent Decree ("Decree"), or the Agreement constituting an admission by any party thereto,

2)       the Agreement and this Decree constitute a full, fair, and equitable disposition of all claims in this matter between the parties, and

3)        the terms of this Decree adequately protect the public interest in accordance with all statutes referenced herein,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

1.       This Decree is agreed to and conditionally entered as of December 4, 2003 by and among Defendant Willard Industries, Inc. ("Willard"), and the Plaintiffs in the above-captioned action, to wit, Karen Arnett and ECO-Environmental Community Organization, Inc., (collectively "Plaintiffs").

2.    Willard is in the business of aluminum melting and forming and is the owner and operator of a facility and associated property located at 1253 Knowlton Street, Cincinnati, Ohio 45223 ("Facility").

3.    Plaintiffs filed the above-captioned action alleging, among other things, certain violations of federal environmental laws, regulations, and the creation of a continuing air nuisance at and about the Facility.

4.    In the Complaint, the Plaintiffs asserted claims for relief under the federal Clean Air Act ("CAA").

5.    Willard has denied said claims and pled various defenses to them.

6.    On December 4, 2003, the parties executed the Agreement.

7.    The Agreement provides that Willard will, among other things, perform specific confirmatory emissions testing, install an emissions Control System, control fugitive emission, and meet specific continuing operating, monitoring, and reporting requirements.

8.    In reliance on the various promises contained within the Agreement and this Decree, the parties do resolve the above-captioned litigation.

9.    Copies of this Decree and the Agreement will promptly be provided to the U.S. EPA and the Attorney General of the United States more than forty-five days prior to the entry of this Decree being deemed final as provided in paragraph 22 below, in accordance with 42 U.S.C. 7604(c)(3).

**JURISDICTION**

10.    This Court has express subject matter jurisdiction under 42 U.S.C. §7604. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of all other claims asserted in this action, and has personal jurisdiction of each of the parties hereto.

**PARTIES BOUND**

11.    This Decree is binding upon and inures to the benefit of the parties hereto, its/their members, partners, directors, shareholders, officers, agents, servants, employees, representatives, attorneys, and upon those persons in active concert with them who receive actual notice of this Decree.

**WORK TO BE PERFORMED**

12.    **Review of Design of Control System**:  Within twenty-one (21) days after December 4, 2003, Willard, at its expense, shall obtain and send to Plaintiffs' counsel and to William Auberle , detailed design drawings ("Drawings") of an emissions control system, as generally described in the February 3, 2003 proposal from Airvec Systems, Inc., to divert emissions from the lost foam process to the dry hearth aluminum melting furnace ("Furnace"), all of which shall be referred to as the "Control System."  Plaintiffs may elect to use different consultants for different tasks to be carried out under the Agreement and this Decree.  If Plaintiffs elect to use a consultant other than Mr. Auberle for a particular task, Plaintiffs' counsel will identify the consultant for the task and supply the consultant's address to Willard.  Plaintiffs' designated consultant for each task shall be referred to as the "Consultant" in this Decree.

13.    The Drawings shall include the depiction of certain monitoring devices, which shall include a thermocouple or other equivalent device on the Furnace to

accurately and continuously measure the temperature in the Furnace and record this information on a digital data recorder and a flow meter or other equivalent device in the bucket elevator shaft, tied to the digital data recorder, that shall accurately and continuously measure the air flow in the bucket elevator shaft (collectively "Monitoring Devices"). Within fifteen (15) days after execution of the Agreement by both parties, Willard shall obtain and send to Plaintiffs' counsel and Consultant bona fide, competitive prices for purchasing and installing such Monitoring Devices. If such prices exceed $5,000.00 in the aggregate, then Plaintiffs' Consultant shall attempt to propose alternative Monitoring Devices that cost $5,000.00 or less in the aggregate within six (6) business days after receipt of such price quotes. If the cost of the Monitoring Devices exceeds $5,000.00 in the aggregate, Willard and Plaintiffs will have five (5) business days to reach agreement about what to do. If the parties reach such agreement, the parties shall proceed to perform pursuant to this Decree. If no agreement is reached, the parties shall immediately advise the Court in writing. Upon receipt of the written notice, this Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume.

14.    The Drawings shall more fully describe the Control System and allow Plaintiffs to evaluate the reliability of the proposed Monitoring Devices and the means by which the proposed Control System will accomplish the diversion of organic emissions (that Plaintiffs allege may potentially cause a nuisance, which is denied by Willard) to the Furnace to be consumed by the Furnace's burners, and shall allow the Plaintiffs to determine whether the Control System is capable of being circumvented or by-passed to allow emissions to go anywhere other than to the Furnace for destruction. These

Drawings and evaluation criteria shall be collectively referred to as the "Control System Design and Configuration". Plaintiffs and their Consultant shall have an opportunity to comment upon the Control System Design and Configuration. Such comments will be delivered in writing to Willard's counsel within ten (10) business days after the Drawings are delivered to Plaintiffs' counsel and Consultant.

15.     If the Control System Design and Configuration is acceptable to Plaintiffs, the parties will proceed with the next step set forth in paragraph 16 below. If the Control System Design and Configuration is not acceptable to Plaintiffs, then Willard and Plaintiffs will have ten (10) business days to reach agreement on a Control System Design and Configuration that is acceptable to both Plaintiffs and Willard. If the parties reach such agreement, they shall proceed with the next step set forth in paragraph 16 below. If no such agreement is reached within such ten (10) day period, and the parties do not agree to extend the time for reaching such agreement, then the parties will immediately advise the Court in writing. Upon the receipt of the written notice, this Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume.

16.     **Confirmatory Emissions Testing**: Assuming that the parties have agreed to the Control System Design and Configuration as required in paragraphs 12 - 15 above, then Willard shall, at its expense, arrange within fourteen (14) business days after notice of Plaintiffs' agreement, for additional emissions testing of the emissions sources ("Supplemental Test") comparable to the testing previously performed by Almega Environmental, Inc. as referenced in paragraph 2 of the Agreement ("Initial Test"). The purpose of the Supplemental Test shall be to confirm that the test results from the

Supplemental Test are substantially the same as the Initial Test, and to show that the emissions, which shall be subject to the Control System, will be at least 40% of the total emissions from the lost foam process operating at maximum capacity and to confirm that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace.

17.    Prior to performing the Supplemental Test, Plaintiffs' Consultant and Willard's environmental consultant shall each use their best efforts to agree to the specific methodology for the Supplemental Test, which methodology will be substantially the same as that used for the Initial Test.  If no such agreement is reached within such fourteen (14) day period, and the parties do not agree to extend the time for performing the Supplemental Test, the parties will immediately advise the Court in writing. Upon the receipt of the written notice, the Consent Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume. An environmental consultant selected by Plaintiffs may, at Plaintiffs' option and expense, and an environmental consultant selected by Willard may, at Willard's option and expense, attend and monitor the Supplemental Test to determine that all phases of the Supplemental Test are performed in accordance with the approved methodology.

18.    If the Supplemental Test confirms both that the emissions, which shall be subject to the Control System, are at least 40% of the total emissions from the lost foam process operating at maximum capacity and that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace, then the parties shall promptly proceed with paragraphs 19 - 21 below.  If the Supplemental Test does not

confirm both that the emissions, which shall be subject to the Control System, are at least

40% of the total emissions from the lost foam process operating at maximum capacity

and that at least 40% of the lost foam process emissions of benzene and styrene will be

exhausted to the Furnace, then the parties will immediately advise the Court in writing.

Upon the receipt of the written notice, this Decree will automatically terminate, the case

will be returned to the Court's active docket, and the litigation shall promptly resume.

19.    **Installation of Control System**:  If the conditions set forth in paragraphs

12-18 of this Decree have been met and confirmed in writing signed by Plaintiffs,

Willard shall physically install the Control System, at its expense, within a period not to

exceed fourteen (14) weeks after entry of this Decree by the Court, unless this Court

determines that such installation is delayed by factors beyond Willard's control. Once

installed, Plaintiffs' Consultant may, at Plaintiffs' option and expense, inspect the Control

System to determine that it substantially conforms to the Drawings, and appears to be

properly installed.  Such inspection shall take place within twenty (20) business days

after both Plaintiffs' Consultant and legal counsel have been notified that the Control

System has been fully installed, or such right to inspect shall be waived.

20.    After the Control System as installed has been timely inspected and

Plaintiffs' Consultant has confirmed in writing that it appears to conform to the Drawings

and appears to be properly installed, or such right to inspect has been waived, Willard

shall arrange to have confirmation emissions testing performed ("Final Test"), consistent

with the agreed to protocol for the Supplemental Test, to determine whether the Control

System, when Willard's Furnace is in full operation, is functioning and controlling at

least 40% of total emissions from the lost foam process operating at maximum capacity.

Plaintiffs' Consultant and Willard's environmental consultant may, each at their own option and expense, attend and monitor the Final Test to determine whether the Control System appears to be functioning to meet the purposes of the Agreement and this Decree and to determine that the final tests are being properly conducted.

21.    If the results of the Final Test show that that the Control System, when Willard's Furnace is in full operation, is controlling at least 40% of total emissions from the loss foam process operating at maximum capacity, or such lesser percentage as may be agreeable to Plaintiffs, then the Control System shall be deemed to be properly installed and operating at the time of the Final Test, subject to further monitoring as set forth herein. If the results of the Final Test show either that the Control System, when Willard's Furnace is in full operation, is not controlling at least 40% of total emissions from the lost foam process operating at maximum capacity, or such lesser percentage as may be agreeable to Plaintiffs, then the parties shall submit this matter to the Court to determine, equitably and in the Court's sole and absolute discretion, whether Willard's performance of the items set forth in the Agreement and this Decree is sufficient to relieve Willard of any further performance, or otherwise determine what additional performance, if any, may be required to achieve a cost efficient manner of controlling 40% of total emissions from the lost foam process operating at maximum capacity.

22.    This Decree shall be entered as of December 4, 2003 and after forty-five (45) days shall be deemed final, subject only to the conditions in paragraphs 12-18 and the Court's consideration of any comments by the United States Attorney General.

23.    When this Decree is deemed final under paragraph 22 above, this Decree:

(a)    concludes the Pending Litigation and ends all further litigation between the parties with respect to the facts and claims at issue in the Pending Litigation;

(b)    precludes each party and its/their legal counsel from recovering any legal fees, expert consulting fees or other costs and expenses from the other party and its/their members, partners, directors, shareholders, officers, employees, representatives, agents, servants, or attorneys, except those fees described in paragraph 29 below;

(c)    constitutes a mutual waiver, satisfaction and release of all existing claims of any party against the other, related to the Pending Litigation, whether or not asserted in the Pending Litigation, except with respect to the parties' obligations set forth in the Agreement and in this Decree; and,

(d)    is not to be construed as an admission of liability by any party, except with respect to compliance with the terms of the Agreement and this Decree and recognizes that there has been no determination or admission of liability with respect to any party or any of the claims asserted or which could have been asserted in the Complaint.

24.    Except for claims under the Agreement and this Decree, all claims against the opposing party that exist as of the date of the entry of this Decree, whether or not asserted in the Pending Litigation, shall be deemed to be waived, satisfied and released, but Plaintiffs will be able to seek relief for any breach or other violation of the Agreement or this Decree.

25.    As long as Willard operates its existing lost foam line or any replacement lost foam line at the Facility ("lost foam line"), Willard shall operate the monitoring devices described in this Agreement.  If Willard proposes a major modification to the lost

foam line at the Facility, the Court shall review the terms of this Decree upon the request of any party. For a period of twelve (12) months after the Control System passes the Final Test, Willard shall provide quarterly reports generated by such Monitoring Devices to the Court, Plaintiffs' counsel, and Plaintiffs' Consultant.

26.    As long as Willard operates its lost foam line, Willard shall control fugitive emissions from the lost foam process at the Facility and shall not allow such fugitive emissions to escape into the environment *i.e.*, all emissions must be through permitted emission points. For purposes of this Decree, fugitive emissions do not include emissions transmitted through Willard's dust control system or the Furnace. Specifically, Willard shall allow manufacturing process emissions involving styrene and benzene only from the dust control system and the Furnace, shall keep all doors and windows within sixty (60) feet of the lost foam line closed, shall operate its HVAC system in a manner that maintains negative pressure in the lost foam line area, and shall on a weekly basis perform a smoke test around the perimeter of the lost foam line while the lost foam line is in full operation to demonstrate that negative pressure is being maintained in the lost foam line area. For a period of twelve (12) months after the Control System passes the Final Test noted in paragraphs 20-21 above, Willard shall provide quarterly reports concerning the smoke tests to the Court, Plaintiffs' counsel, and Plaintiffs' Consultant.

27.    Willard shall, after the installation of the Control System, operate the Furnace at the Facility at full capacity during all times the lost foam line is in operation.

28.    When this Decree is deemed final under paragraph 22 above, Plaintiffs shall withdraw all pending objections and appeals pertaining to pending permit applications for the Facility. Further, for a period of twelve (12) months after the entry of

this Decree, Plaintiffs shall not file: (i) any new nuisance action or air appeals for the

Facility; or (ii) any new action for alleged on-going violations of the CAA at the Facility

based on the same facts and claims alleged in the Pending Litigation. Neither the Decree,

including this paragraph 28 thereof, nor the Agreement applies to any appeal or other

action Plaintiffs may wish to take with respect to any additional lost foam line(s) or

modifications to the lost foam process not covered by the Agreement.

29.     **Payment of Professional Fees**:  Upon receipt of Plaintiffs' written notice,

as set forth in Section 3 of the Agreement, of satisfactory completion of the conditions in

Sections 1 and 2 of the Agreement, Willard shall, within three (3) business days, pay

Plaintiffs via a cashier's check the sum of $70,000.00(US) in full satisfaction of all their

claims for Court awarded legal fees, expert consulting fees, and other costs and expenses.

30.     **Specifications for Thermal Oxidation**:  If the results of the Final Test

show that the Control System, when Willard's Furnace is in full operation, is not

controlling at least 40% of the total emissions from the lost foam process operating at

maximum capacity, then Willard shall, in consultation with Plaintiffs' Consultant and

Willard's technical consultant, obtain a site-specific proposal and quote from a reputable

vendor (such as Durr Environmental) for the purchase and installation of either a custom

designed or off-the-shelf thermal oxidizer system with the ability to destroy volatile

organic compounds and hazardous air pollutants emitted from the lost foam process.  The

detailed proposal and quote shall include design specifications applicable to Willard's

facility and the lost foam process, the capital cost for the system, and the projected annual

operating costs.  Willard shall provide the proposal and quote required herein to the

Plaintiffs as soon as it is available from the vendor.  The fact that Willard has agreed to

obtain this information will not in any manner be construed as suggesting that the installation of a thermal oxidizer system is to be regarded as an appropriate remedy in this matter.

31.    **Continuing Jurisdiction of Court**:  The parties consent to the exclusive jurisdiction and venue in the United States District Court for the Southern District of Ohio, Western Division for judicial proceedings to resolve any disputes or alleged breaches of either the Agreement or this Decree.  In any judicial proceeding to enforce contractual obligations, the Court may order any remedy available at law or equity.

32.    **Entire Agreement**:  The parties acknowledge that the Agreement and this Decree constitute their entire understanding as to the subject matter set forth in those documents.  In the event this Decree is not deemed to be final under paragraph 22 above and litigation resumes, the fact that the parties have entered into the Agreement and this Decree shall not constitute a waiver of any claims, defenses, or other matters asserted in the Pending Litigation.

33.    The parties reserve all legal and equitable rights available to them to enforce the provisions of this Decree.

34.    Whenever under this Decree notice is required to be given or documents required to be served upon a party, the communication shall be directed to the following persons:

As to Plaintiffs:

> D. David Altman, Esq.
> D. David Altman Co., LPA
> 15 E. 8th Street, Suite 200W
> Cincinnati, Ohio 45202

Karen Arnett
7373 Hickman Street
Cincinnati, Ohio 45231

ECO Environmental Community Organization
Attn: Marilyn Wall
515 Wyoming Avenue
Cincinnati, OH 45215

As to Defendant:

Charles M. Meyer, Esq.
Santen & Hughes
312 Walnut Street, Suite 3100
Cincinnati, Ohio 45202

And to:

Paul Thompson, President
Willard Industries, Inc.
1253 Knowlton Street
Cincinnati, Ohio 45223

35.    This Decree shall not constitute an admission or evidence of any wrongdoing, misconduct or liability on the part of Willard or any director, officer, shareholder, employee, or other person affiliated with Willard.

36.    The parties consent to the form, substance, and entry of this Decree.

37.    Counsel for each party certifies that he is fully authorized by the party or parties he represents to enter into the terms and conditions of this Decree and to bind each represented party to it.

APPROVED:

_____
Judge S. Arthur Spiegel

13

ON BEHALF OF ALL PLAINTIFFS:

By: _____
     D. David Altman, Esq.
     D. David Altman Co., LPA
     15 E. 8th Street, Suite 200W
     Cincinnati, Ohio 45202


WILLARD INDUSTRIES, INC.

By: _____
     Charles M. Meyer, Esq.
     Santen & Hughes
     312 Walnut Street, Suite 3100
     Cincinnati, Ohio 45202

Attorney for Defendant

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the ⊔⊤⊔ day of

December, 2003 by and between Karen Arnett and ECO: Environmental Community

Organization, collectively "Plaintiffs", and Willard Industries, Inc. ("Willard").

**WHEREAS**, Plaintiffs commenced a private citizen enforcement action against Willard

pertaining to certain aluminum foundry operations at 1253 Knowlton Street, Cincinnati, Ohio

("Knowlton Street Plant") alleging, among other things, certain violations of environmental laws,

regulations, and the creation of an air nuisance, which action is pending in U.S. District Court,

Southern District of Ohio, Western Division ("Court"), Case No. C-1-02 087 ("Pending

Litigation");

**WHEREAS**, Plaintiffs and Willard have reached this agreement to settle the claims set

forth in the Pending Litigation, which understanding is set forth in this Agreement and the

Consent Decree (attached as Exhibit A); and

**WHEREAS**, Plaintiffs and Willard enter into this Agreement and Consent Decree in an

effort to settle disputed claims and avoid the expense and time involved in protracted litigation,

and with the acknowledgement that by entering into this Agreement and Consent Decree Willard

does not admit any wrongdoing, and neither party admits any liability of any nature whatsoever

(except with respect to performing the items set forth in this Agreement). Plaintiffs do not admit

or concede that, if the litigation proceeds, Willard's liability and obligations will be limited to the

items set forth herein; and Defendants do not admit or concede that, if the litigation proceeds,

Willard will have any liability or obligation to perform the items set forth herein.

**IN CONSIDERATION** of the promises and obligations set forth in this Agreement and

Consent Decree, the parties agree as follows:

*— EXHIBIT A —*

1.    **Review of Design of Control System**:  Within twenty-one (21) days after

execution of this Agreement by both parties, Willard, at its expense, will obtain and send to

Plaintiffs' counsel and to William Auberle , detailed design drawings ("Drawings") of an

emissions control system, as generally described in the February 3, 2003 proposal from Airvec

Systems, Inc., to divert emissions from the lost foam process to the dry hearth aluminum melting

furnace ("Furnace"), all of which shall be referred to as the "Control System."  Plaintiffs may

elect to use different consultants for different tasks to be carried out under this Agreement and

the Consent Decree.  If Plaintiffs elect to use a consultant other than Mr. Auberle for a particular

task, Plaintiffs' counsel will identify the consultant for the task and supply the consultant's

address to Willard.  Plaintiffs' designated consultant for each task shall be referred to as the

"Consultant" in this Agreement and the Consent Decree.

The Drawings will include the depiction of certain monitoring devices, which will

include a thermocouple or other equivalent device on the Furnace to accurately and continuously

measure the temperature in the Furnace and record this information on a digital data recorder and

a flow meter or other equivalent device in the bucket elevator shaft, tied to the digital data

recorder that accurately and continuously measures the air flow in the bucket elevator shaft

(collectively "Monitoring Devices").  Within fifteen (15) days after execution of this Agreement

by both parties, Willard will obtain and send to Plaintiffs' counsel and Consultant bona fide,

competitive prices for purchasing and installing such Monitoring Devices.  If such prices exceed

$5,000.00 in the aggregate, then Plaintiffs' Consultant will attempt to propose alternative

Monitoring Devices that cost $5,000.00 or less in the aggregate within six (6) business days after

receipt of such price quotes.  If the cost of the Monitoring Devices exceeds $5,000.00 in the

aggregate, Willard and Plaintiffs will have five (5) business days to reach agreement about what

to do.  If the parties reach such agreement, the parties will proceed to perform pursuant to this Agreement.  If no agreement is reached, the parties will immediately advise the Court in writing. Upon receipt of the written notice, the Consent Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume.

The purpose for obtaining the Drawings is to more fully describe the Control System and to allow Plaintiffs to evaluate the reliability of the proposed Monitoring Devices and the means by which the proposed Control System will accomplish the diversion of organic emissions (that Plaintiffs allege may potentially cause a nuisance, which is denied by Willard) to the Furnace to be consumed by the Furnace's burners, and whether the Control System is capable of being circumvented or by-passed to allow emissions to go anywhere other than to the Furnace for destruction.  These Drawings and evaluation criteria shall be collectively referred to as the "Control System Design and Configuration".  Plaintiffs and their Consultant shall have an opportunity to comment upon the Control System Design and Configuration.  Such comments will be delivered in writing to Willard's counsel within ten (10) business days after the Drawings are delivered to Plaintiffs' counsel and Consultant.

If the Control System Design and Configuration is acceptable to Plaintiffs, the parties will proceed with the next step set forth in Section 2 below.  If the Control System Design and Configuration is not acceptable to Plaintiffs, then Willard and Plaintiffs will have ten (10) business days to reach agreement on a Control System Design and Configuration that is acceptable to both Plaintiffs and Willard.  If the parties reach such agreement, they will proceed with the next step set forth in Section 2 below.  If no such agreement is reached within such ten (10) day period, and the parties do not agree to extend the time for reaching such agreement, then the parties will immediately advise the Court in writing. Upon the receipt of the written notice,

3

the Consent Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume.

2.    **Confirmatory Emissions Testing**:  Assuming that the parties have agreed to the Control System Design and Configuration as required in Section 1 above, then Willard shall, at its expense, arrange within fourteen (14) business days after notice of Plaintiffs' agreement, for additional emissions testing of the emissions sources ("Supplemental Test") comparable to the testing previously performed by Almega Environmental, Inc. (Project 2295.1) on October 18, 2002, reported as "Emissions Engineering Evaluation Lost Foam Casting Willard Industries, Inc. Cincinnati, Ohio" ("Initial Test").  Notwithstanding the generality of the foregoing, the purpose of this Supplemental Test is to confirm that the test results from the Supplemental Test are substantially the same as the Initial Test, and to show that the emissions, which shall be subject to the Control System, will be at least 40% of the total emissions from the lost foam process operating at maximum capacity and to confirm that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace.

Prior to performing the Supplemental Test, Plaintiffs' Consultant and Willard's environmental consultant will each use their best efforts to agree to the specific methodology for the Supplemental Test, which methodology will be substantially the same as that used for the Initial Test.  If no such agreement is reached within such fourteen (14) day period, and the parties do not agree to extend the time for performing the Supplemental Test, the parties will immediately advise the Court in writing. Upon the receipt of the written notice, the Consent Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume  An environmental consultant selected by Plaintiffs may, at Plaintiffs' option and expense, and an environmental consultant selected by Willard may, at

4

Willard's option and expense, attend and monitor the Supplemental Test to determine that all phases of the Supplemental Test are performed in accordance with the approved methodology.

If the Supplemental Test confirms both that the emissions, which shall be subject to the Control System, are at least 40% of the total emissions from the lost foam process operating at maximum capacity and that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace, then the parties will promptly proceed with the next step set forth in Section 3 below.  If the Supplemental Test does not confirm both that the emissions, which shall be subject to the Control System, are at least 40% of the total emissions from the lost foam process operating at maximum capacity and that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace, then the parties will immediately advise the Court in writing. Upon the receipt of the written notice, the Consent Decree will automatically terminate, the case will be returned to the Court's active docket, and the litigation shall promptly resume.

3.    **Installation of Control System**:  If the conditions set forth in Sections 1 and 2 have been met and confirmed in writing signed by Plaintiffs, Willard will physically install the Control System, at its expense, within a period not to exceed fourteen (14) weeks after entry of the Consent Decree by the Court, unless the Court determines that such installation is delayed by factors beyond Willard's control.  Once installed, Plaintiffs' Consultant may, at Plaintiffs' option and expense, inspect the Control System to determine that it substantially conforms to the Drawings, and appears to be properly installed.  Such inspection shall take place within twenty (20) business days after both Plaintiffs' Consultant and legal counsel have been notified that the Control System has been fully installed, or such right to inspect shall be waived.

After the Control System as installed has been timely inspected and Plaintiffs' Consultant has confirmed in writing that it appears to conform to the Drawings and appears to be properly installed, or such right to inspect has been waived, Willard will arrange to have confirmation emissions testing performed ("Final Test"), consistent with the agreed to protocol for the Supplemental Test, to determine whether the Control System, when Willard's Furnace is in full operation, is functioning and controlling at least 40% of total emissions from the lost foam process operating at maximum capacity.  Plaintiffs' Consultant and Willard's environmental consultant may, each at their own option and expense, attend and monitor the Final Test to determine whether the Control System appears to be functioning to meet the purposes of this Agreement and the Consent Decree and to determine that the final tests are being properly conducted.

If the results of the Final Test show that that the Control System, when Willard's Furnace is in full operation, is controlling at least 40% of total emissions from the loss foam process operating at maximum capacity, or such lesser percentage as may be agreeable to Plaintiffs, then the Control System shall be deemed to be properly installed and operating at the time of the Final Test, subject to further monitoring as set forth herein.

If the results of the Final Test show either that the Control System, when Willard's Furnace is in full operation, is not controlling at least 40% of total emissions from the lost foam process operating at maximum capacity, or such lesser percentage as may be agreeable to Plaintiffs, then the parties shall submit this matter to the Court to determine, equitably and in the Court's sole and absolute discretion, whether Willard's performance of the items set forth in this Agreement and Consent Decree is sufficient to relieve Willard of any further performance, or otherwise determine what additional performance, if any, may be required to achieve a cost

efficient manner of controlling 40% of total emissions from the lost foam process operating at maximum capacity.

     4.    **Consent Decree**:  The Consent Decree will be entered on December 4, 2003 and after forty-five (45) days will be deemed final, subject only to the conditions in Sections 1 and 2 and the Court's consideration of any comments by the United States Attorney General.  The Consent Decree is incorporated in the Agreement and made a part hereof.  The parties agree that the Consent Decree will contain the following provisions:

     (a)    a provision concluding the Pending Litigation and ending all further litigation between the parties with respect to the facts and claims at issue in the Pending Litigation;

     (b)    a provision precluding each party and its/their legal counsel from seeking or recovering any legal fees, expert consulting fees or other costs and expenses from the other party and its/their members, partners, directors, shareholders, officers, employees, representatives, agents, or attorneys, except those fees described in Section 5 below;

     (c)    a provision containing a mutual waiver, satisfaction and release of all existing claims of any party against the other, related to the Pending Litigation, whether or not asserted in the Pending Litigation, except with respect to the parties' obligations set forth in this Agreement and the Consent Decree;

     (d)    a provision acknowledging that entering into the Consent Decree is not to be construed as an admission of liability by any party, except with respect to compliance with the terms of the Agreement and Consent Decree, and that there has been no determination or admission of liability with respect to any party or any of the claims asserted or which could have been asserted in the Complaint;

(e)     a provision whereby Willard agrees to control fugitive emissions from the lost foam process at the Knowlton Street Plant, and to not allow such fugitive emissions to escape into the environment *i.e.*, all emissions must be through permitted emission points. For purposes of the Consent Decree, fugitive emissions do not include emissions transmitted through Willard's dust control system or the Furnace. Specifically, Willard will allow manufacturing process emissions involving styrene and benzene only from the dust control system and the Furnace, will keep all doors and windows within sixty (60) feet of the lost foam line closed, will operate its HVAC system in a manner that maintains negative pressure in the lost foam line area, and will on a weekly basis perform a smoke test around the perimeter of the lost foam line while the lost foam line is in full operation to demonstrate that negative pressure is being maintained in the lost foam line area. Willard will provide quarterly reports of these smoke tests to the Court and Plaintiffs for a period of twelve (12) months after the Control System passes the Final Test noted in Section 3; and

(f)     provisions whereby the parties agree to perform their respective obligations set forth in this Agreement.

5.     **Other Obligations and Agreements**:

(a)     Effective on the date the Consent Decree becomes final as provided by paragraph 4 of this Agreement and paragraph 22 of the Consent Decree, except for claims under this Agreement or the Consent Decree, the parties agree that all claims against the opposing party that exist as of the date that this Agreement is signed, whether or not asserted in the Pending Litigation, shall be deemed to be waived, satisfied and released, but Plaintiffs will be able to seek relief as provided for in this Agreement and the Consent Decree, including relief for any breach or other violation of this Agreement or the Consent Decree.

8

(b)    As long as Willard operates its existing lost foam line or any replacement lost foam line at the Knowlton Street Plant ("lost foam line"), Willard will operate the monitoring devices described in this Agreement.  If Willard proposes a major modification to the lost foam line at the Knowlton Street Plant, the Court will review the terms of the Decree upon the request of any party to the Decree.  For a period of twelve (12) months after the Control System passes the Final Test, Willard will provide quarterly reports generated by such Monitoring Devices to the Court, Plaintiffs' counsel, and Plaintiffs' Consultant.

(c)    As long as Willard operates its lost foam line at the Knowlton Street Plant, Willard will meet the fugitive emissions requirements of Section 4(e).  For a period of twelve (12) months after the Control System passes the Final Test, Willard will provide quarterly reports concerning the smoke tests to the Court, Plaintiffs' counsel, and Plaintiffs' Consultant.

(d)    Willard will operate the Furnace at the Knowlton Street Plant at full capacity during all times the lost foam line is in operation.

(e)    Plaintiffs agree to withdraw all pending objections and appeals pertaining to pending permit applications for the Knowlton Street Plant.  Further, for a period of twelve (12) months after entry of the Decree, Plaintiffs agree not to file:  (i) any new nuisance action or air appeals related to the Knowlton Street Plant, or (ii) any new action for alleged on-going violations of the CAA at the Knowlton Street Plant based on the same facts and claims alleged in the Pending Litigation.  Neither this Agreement, including this paragraph 5(e), nor the Consent Decree applies to any appeal or other action Plaintiffs may wish to take with respect to any additional lost foam line(s) or modifications to the lost foam process not covered by this Agreement.

6.    **Payment of Professional Fees**:  Upon receipt of Plaintiffs' written notice, as set forth in Section 3 of this Agreement, of satisfactory completion of the conditions in Sections 1 and 2 of this Agreement, Willard will, within three (3) business days, pay Plaintiffs via a cashier's check the sum of $70,000.00 in full satisfaction of all their claims for legal fees, expert consulting fees, and other costs and expenses.

7.    **Specifications for Thermal Oxidation**:  If the results of the Final Test show that the Control System, when Willard's Furnace is in full operation, is not controlling at least 40% of the total emissions from the lost foam process operating at maximum capacity, then Willard will, in consultation with Plaintiffs' Consultant and Willard's technical consultant, obtain a site-specific proposal and quote from a reputable vendor (such as Durr Environmental) for the purchase and installation of either a custom designed or off-the-shelf thermal oxidizer system with the ability to destroy volatile organic compounds and hazardous air pollutants emitted from the lost foam process.  The detailed proposal and quote will include design specifications applicable to Willard's facility and the lost foam process, the capital cost for the system, and the projected annual operating costs.  Willard will provide the proposal and quote required herein to the Plaintiffs as soon as it is available from the vendor.  The fact that Willard has agreed to obtain this information will not in any manner be construed as suggesting that the installation of a thermal oxidizer system is to be regarded as an appropriate remedy in this matter.

8.    **Stay of Proceedings and Continuing Jurisdiction of Court**:

(a)    The parties agree to suspend discovery efforts, and request that the Court stay all proceedings in the Pending Litigation, as long as the parties are acting in good faith to proceed toward settlement in accordance with the terms of this Agreement.

(b)     The parties consent to the exclusive jurisdiction and venue in the United States District Court for the Southern District of Ohio, Western Division for judicial proceedings to resolve any disputes or alleged breaches.  In any judicial proceeding to enforce contractual obligations, the Court may order any remedy available at law or equity.

9.     **Entire Agreement**:  The parties acknowledge that this Agreement and Consent Decree constitute their entire understanding as to the subject matter set forth in this Agreement and the attached Consent Decree.  In the event the Consent Decree is not deemed final as provided by paragraph 4 of this Agreement and paragraph 22 of the Decree and litigation resumes, the fact that the parties have entered into this Agreement and the Consent Decree shall not constitute a waiver of any claims, defenses or other matters asserted in the Pending Litigation.

**IN WITNESS WHEREOF**, the parties have signed this Agreement as of the date first set forth above.

**WITNESSES:**


_____          _____
_____          Karen Arnett




                                         **ECO:  ENVIRONMENTAL**
                                         **COMMUNITY ORGANIZATION**

_____
_____          By: _____


11

_(signature)_

_Barbara A. Evers_

233985.13

**WILLARD INDUSTRIES, INC.**

By: _(signature)_

Paul Thompson, President