UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KAREN A. ARNETT, et al., | : | Case No. C-1-02-87 |
| | : | |
| Plaintiffs, | : | (Judge S. Arthur Spiegel) |
| | : | |
| vs. | : | |
| | : | |
| WILLARD INDUSTRIES, INC., | : | |
| | : | |
| Defendant. | : | |

## MOTION TO ENFORCE COMPLIANCE WITH THE CONSENT DECREE

Pursuant to Paragraphs 21 and 31 of the December 4, 2003 Consent Decree, Plaintiffs move this Court to enforce Defendant Willard Industries' compliance with that Decree. Namely, Plaintiffs respectfully request that this Court require Defendant to: (1) take additional measures, such as the installation of best available technology – a thermal oxidizer system with the capability to destroy volatile organic compounds and hazardous air pollutants – to meet the emissions control requirement set forth in the Consent Decree, and (2) properly install the required monitoring devices so that Defendant can produce quarterly reports required by the Consent Decree. Additionally, Plaintiffs request that Defendant be required to pay to Plaintiffs the costs and attorneys fees associated with the present Motion.

The basis for this Motion is set forth in the attached Memorandum in Support.

2

Respectfully submitted,


Signed: /s/ D. David Altman
D. David Altman (0021457)
Trial Attorney for Plaintiffs
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513) 721-2180
FAX: (513) 721-2299
daltman@one.net

**MEMORANDUM IN SUPPORT**

  I.  *Introduction.*

  Plaintiffs file this Motion to Enforce because of Defendant's continued failure to comply with central provisions of the December 4, 2003 Consent Decree ("Decree") entered by this Court. First, Defendant is not controlling organic compound emissions – including emissions of styrene and benzene – at the *minimum* level required by the Decree, as confirmed by the Final Test and as noted by Plaintiffs' consultant, Environmental Engineer William Auberle. (November 15, 2006, Auberle Decl. ¶¶ 9-10, attached as Ex. A).[1] Additionally, Defendant's monitoring equipment, required by Paragraph 25 of the Decree, will be physically and operationally incapable of producing the reports required by the Consent Decree. (Ex. A ¶ 12). What is worse, the recent revelation that Defendant's controls are not controlling emissions as required, which should have come to light a few months after entry of the Decree, has been long delayed by Defendant's failure to properly install the controls.

  It is because of the potential adverse impacts to human health and the environment that could result from Defendant's failure to control its organic compound emissions that Plaintiffs respectfully request that this Court require Defendant to take measures necessary to control its emissions and to properly install the required monitoring devices, as authorized by the Consent Decree.

**II. Background Facts.**

  Plaintiffs alleged in their citizen suit that Defendant was violating, *inter alia*, the Federal Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and regulations adopted pursuant thereto, and that Defendant's emissions were creating a continuing air nuisance at and about the Willard

---

[1] William Auberle's professional background is found in Paragraph 3 of Exhibit A.

Industries Facility. (Feb. 8, 2002 Compl. at e.g. ¶¶ 24, 38-46, 47-54). It is undisputed that the Willard Industries Facility emits organic compounds, including benzene and styrene. (Decree ¶ 16).

On December 4, 2003, this case was resolved through entry of the Decree. The Decree required that Defendant do the following:

(1) Provide detailed drawings for an emissions control system ("Control System") and monitoring devices for Plaintiffs' approval; (Decree ¶¶ 12, 13)

(2) Conduct a supplemental test before installation of the Control System to demonstrate that "the emissions, which shall be subject to the Control System, will be at least 40% of the total emissions from the lost foam process operating at maximum capacity and to confirm that at least 40% of the lost foam process emissions of benzene and styrene will be exhausted to the Furnace" for destruction; (*Id*. ¶ 16)

(3) Install the Control System within a period not to exceed 14 weeks after entry of the Decree and notify Plaintiffs of that installation so that Plaintiffs' consultant could inspect the Control System to insure that it was "properly installed;" (*Id*. ¶19)

(4) Conduct the Final Test to ascertain whether "the Control System, when Willard's Furnace is in full operation, is functioning and controlling at least 40% of total emissions;" (*Id*. ¶ 20)

(5) If the Final Test showed that the Control System was not controlling 40% of total emissions, then Defendant was to provide to Plaintiffs a proposal and quote for a thermal

oxidizer system that is able to destroy volatile organic compounds and hazardous air pollutants; and, (*Id*. ¶ 30)

(6) Once the Control System was ***fully operational***, Defendant was to provide, for a period of twelve months after the Final Test, quarterly reports generated by the monitoring devices to the Court, Plaintiffs' counsel, and Plaintiffs' consultant. (*Id*. ¶25)

Since this Court entered the Decree, Defendant has either delayed compliance or totally failed to comply with the requirements of the Decree. For example, Defendant did not completely install the Control System (and have the system operational) until September 2005, ***well over 80 weeks*** after entry of the Decree. (See October 12, 2005 Letter from Defendant's counsel, attached as Exhibit B). During this time, Plaintiffs attempted to resolve Defendant's noncompliance extrajudicially through numerous letters and e-mails (over 180 e-mails regarding test and delay issues, alone, were directed by Plaintiffs) urging Defendant to comply and seeking reasons for the noncompliance. In fact, Plaintiffs have given Defendant every opportunity to comply without resort to Court intervention. As a consequence of Defendant's noncompliance, organic emissions (including emissions of benzene and styrene) went uncontrolled.

**The Final Test**

The Final Test – which occurred on July 6, 2006, over two and one-half years after entry of the Decree – demonstrated that the Defendant is ***still not in compliance*** with the requirements of the Decree.[2]

---

[2] While the Final Test was completed on July 6, 2006, it was over two months before Plaintiffs received a complete report outlining the results of the Final Test. (See September 27, 2006 letter from Defendant's counsel, Attached as Exhibit C). As a consequence, Plaintiffs' ability to confirm what they already knew – that the Control System was not performing as required – was delayed.

5

Mr. Auberle, who monitored the Final Test and reviewed the test report from the Final Test, as submitted by Defendant's consultant, concluded that "the emissions control system at Willard Industries does not comply with the performance criteria set forth in the order." (Ex. A ¶¶ 4, 5, 6).

First, the Control System is not diverting 40% of organic emissions to the furnace for destruction. (*Id*. ¶¶ 9, 10). During the Final Test, two independent test runs were conducted. During the first run, the Control System only controlled 33% of volatile organic compound emissions. After the first run, Mr. Auberle consulted with Defendant "in an attempt to optimize performance of the system." (Ex. A ¶ 10). During the second run, which was conducted under ***optimal conditions*** and not normal operating conditions, the Control System controlled 40% of emissions. However, Mr. Auberle concluded that the result of the second run is "not sustainable in regular production." (*Id*.) It is beyond dispute that the requirement that the Control System control a minimum of 40% of total emissions is not met. (*Id*.)

Additionally, Defendant will be unable to meet its duty, found in Paragraph 25 of the Decree, to provide quarterly reports to the Court, Plaintiffs' counsel, and Plaintiffs' Consultant. Monitoring devices generate these quarterly reports. However, Mr. Auberle observed the following during the July 6, 2006 Final Test: "I inspected the monitoring devices and determined that they were physically and operationally incapable of producing data usable for the stipulated quarterly reports." (Ex. A ¶ 12).

### III. Conclusion

Based on the foregoing, Plaintiffs respectfully request that this Court require Defendant to:

(1) Control its total emissions by installing the best available technology – a thermal oxidizer system;[3]

(2) Properly install the monitoring devices; and,

(3) Pay the attorneys fees and costs associated with this Motion.

Respectfully submitted,

Signed: /s/ D. David Altman
D. David Altman (0021457)
Trial Attorney for Plaintiffs
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513) 721-2180
FAX: (513) 721-2299
daltman@one.net

---

[3] As a result of the Defendant's failure of the Final Test, the Decree authorizes the Court to consider requiring Defendant to install a thermal oxidizer system. Information on such a system will be before the Court because the Decree triggered Defendant's duty to obtain a proposal for the installation of a thermal oxidizer capable of controlling Defendant's emissions. (Decree ¶ 30).

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2006, I filed Plaintiffs Motion to Enforce Compliance with the Consent Decree with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to the following individual:

Charles M. Meyer, Esq.
Trial Attorney for Defendant
Santen & Hughes
312 Walnut Street, Suite 3100
Cincinnati, Ohio 45202.
cmm@santen-hughes.com

Additionally, I served a copy of the foregoing Motion on said individual via regular U.S. mail.

Signed: /s/ D. David Altman
D. David Altman (0021457)
Trial Attorney for Plaintiffs
D. David Altman Co., L.P.A.
15 East 8th St., Suite 200W
Cincinnati, OH 45202
(513) 721-2180
FAX: (513) 721-2299
daltman@one.net